(173 App. Div. 598)

### In re EISENBERG.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

ATTORNEY AND CLIENT ⬅➡44(2)—CONVERSION OF CLIENT'S FUNDS—SUSPENSION FROM PRACTICE.

An attorney, who converts funds of a client by transferring a check to his own creditor, another client, with direction to apply the proceeds on a prior indebtedness for moneys collected and retained, and who unduly delays settlement with the first client, there being extenuating circumstances of youth, inexperience, and mental worry on account of his wife's illness, will be suspended from practice for one year.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 56; Dec. Dig. ⬅➡44(2).]

In the matter of I. Mortimer Eisenberg, an attorney. Application on the report of the official referee upon charges against respondent for professional misconduct. Respondent suspended from practice for

one year, with leave to apply for reinstatement at the expiration of the term, upon proof of compliance with the conditions to be incorporated in the order to be entered.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

Einar Chrystie, of New York City (Charles B. Brophy, of New York City, of counsel), for petitioner.

I. Mortimer Eisenberg, of New York City, pro se.

CLARKE, P. J. The respondent was admitted to the bar in October, 1913. The misconduct charged is the conversion of moneys collected on behalf of one Frank Schuler, a client. On or about March 15, 1915, the respondent received from Mrs. Anita De Forest her check for $136, in payment of her indebtedness to Schuler. The respondent thereafter indorsed and delivered the check to one Israel Eisenstein, another client to whom he was indebted, with directions to put it through his bank and apply the proceeds upon the respondent's account with him. Before depositing the check, Eisenstein sent it to the bank upon which it was drawn for certification. The bank refused to certify the check on the ground of insufficient funds, and the respondent was notified accordingly. Eisenstein, at the respondent's request, then deposited the check in his own bank, and on March 16, 1915, it was paid by the bank upon which it was drawn.

The respondent did not pay Schuler the moneys due him, and upon inquiry told Schuler that the check had been returned by the bank for insufficiency of funds. Some time in May, 1915, Mrs. De Forest exhibited to Schuler the paid check which she had given to the respondent, and Schuler thereupon called at the respondent's office and demanded payment. The respondent did not promptly comply with this demand, and was thereafter served with a copy of the present charges. He then gave Schuler his check for the moneys due him, and, knowing the same to be uncollectible, gave Schuler's wife $60 in cash and two checks of third persons before his own check was returned by the bank. These two checks also proved uncollectible, as did a third which the respondent gave in their place. On July 22, 1915, shortly before his hearing before the committee on grievances of the Bar Association, the respondent settled his indebtedness with Schuler. No claim was made, and there was no evidence from which it might be inferred, that the respondent knew that the several checks of third persons which he gave Schuler would be returned unpaid.

The respondent concedes that his conduct amounted to a conversion of his client's moneys. As an extenuating circumstance, however, he claimed to have been ignorant of the fact that the check of Mrs. De Forest had been paid, and to have intended to remit to Schuler the money due him immediately upon learning of such payment. He testified that, upon inquiry, he was frequently informed by Mr. Eisenstein that the check had not been paid. The respondent called Israel Eisenstein to corroborate his testimony, but the witness denied that he had ever informed the respondent that the check had not been paid. At the close of his examination the respondent suggested that it might have been Israel Eisenstein's son, Harry, who informed him of the nonpay-

ment of the check, and an adjournment was granted for the purpose of calling the younger Eisenstein as a witness. On the adjourned day, Harry A. Eisenstein testified that he knew of the bank's refusal to certify the check, and that it had thereafter been deposited to the credit of the firm, composed of his father and himself. He further testified that he assumed, without any knowledge on the subject, that the check had not been paid, and so informed the respondent upon his inquiring as to such payment.

In his report, the referee finds that:

This testimony must be considered as not quite meeting the respondent's case. Giving to him the utmost benefit of it, as far as it goes, and considering the other features of the case in the light most favorable to him, it still clearly appears that the respondent, by transferring the check in question to Israel Eisenstein with the direction that the proceeds should be credited on account of his prior indebtedness for moneys collected and retained by him, became guilty of the conversion of the money which he should have paid over to Schuler; and it also remains clearly established that he unduly delayed a settlement with Schuler. * * * The respondent pleads youth (he was 23 year old at the time of the conversion), inexperience, and mental worry on account of his wife's illness as a partial excuse, and regrets the occurrence, and prays for a merciful disposition of his case, for which it seems he has presented reasons which deserve consideration. He has also submitted affidavits on character."

The respondent has been guilty of misconduct in his office as attorney which cannot be overlooked. He is therefore suspended from practice for one year, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon. All concur.